U.S. v. Ventura

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 10th day of August, two thousand eighteen.

Present:     RALPH K. WINTER,
             ROSEMARY S. POOLER,
             BARRINGTON D. PARKER,
                  *Circuit Judges*.

_____

UNITED STATES OF AMERICA,

                  *Appellee*,

          v.                                                    15-2675

KEVIN VENUTRA,[1]

                  *Defendant-Appellant*.

_____

Appearing for Appellant:     John C. Meringolo, Brooklyn, N.Y.

Appearing for Appellee:      Micah W.J. Smith, Assistant United States Attorney (Margaret Garnett, *on the brief*) *for* Geoffrey S. Berman, United States Attorney for the Southern District of New York, New York, N.Y.

Appeal from the United States District Court for the Southern District of New York (Koeltl, *J.*).

_____

[1] The Clerk is respectfully directed to amend the caption as above.

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED**.

Defendant-Appellant Kevin Ventura appeals from an August 20, 2015 judgment of the United States District Court for the Southern District of New York (Koeltl, *J.*) convicting him, after a jury trial, of five charges related to several murders, and sentencing him principally to two life terms plus forty-five years imprisonment. We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

a. Federal Arson Under 18 U.S.C. § 924(c)(3)

Ventura argues that his conviction on Count One, for committing murder through the use of a firearm, in violation of 18 U.S.C. § 924(j), must be overturned because, he argues, federal arson is not a crime of violence under 18 U.S.C. § 924(c)(3). Ventura did not object below; however, any error here would be attributable to the later-decided *Johnson v. United States*, 135 S.Ct. 2551 (2015). Accordingly, our review is either for plain error, or modified plain error. *See United States v. Botti*, 711 F.3d 299, 308-09 (2d Cir. 2013). Even applying the modified standard, vacatur is not warranted because any error here did not affect Ventura's substantial rights. In Count One, the government charged that Ventura used or carried a firearm, causing the death of Montanez, in connection with either of two predicate offenses: federal arson (as a crime of violence) or conspiracy to distribute marijuana (as a drug crime). To convict Ventura, the jury only needed to find that Ventura committed one (or both) of these predicate crimes. At trial, Ventura admitted to engaging in drug trafficking. Further, certain questions from the jury during deliberations indicate that the jury was considering the drug trafficking predicate on Count One, instead of the arson predicate. *See* Trial Tr. at 1661. We therefore conclude that any error here would not have affected Ventura's substantial rights, because he has not pointed to any error that would have led the jury to a different verdict on Count One. Thus Ventura fails to meet either plain error standard.

b. Ex Post Facto Claims

Ventura asserts that his convictions on Counts One, Four, and Five must be vacated because the jury instructions violated the Ex Post Facto Clause. Counts One, Four, and Five were brought under 18 U.S.C. § 924(j), which criminalizes causing death in connection with a Section 924(c) violation. Ventura argues specifically that the jury instructions erroneously permitted conviction for the use, carry or possession of a firearm, even though, at the time of the offenses, Section 924(c) prohibited only the use or carry of a firearm—not possession alone. As Ventura acknowledges, this argument was not preserved, and we review for plain error.

In 1995, the Supreme Court issued *Bailey v. United States*, 516 U.S. 137 (1995), holding that Section 924(c)'s prohibition on the use or carry of firearms did not criminalize mere possession. In 1998, Congress passed a law specifically adding a prohibition on the possession of a firearm back into Section 924(c). The criminal conduct here all took place in 1995 and 1996, during the window where possession was not criminalized. Accordingly, as the government acknowledges, the jury instructions were erroneous, since they included language regarding possession.

However, vacatur is not warranted. On each Section 924(j) charge, the jury convicted based on a violation of 924(c) resulting in the death of a unique victim. Each victim was shot to death. There is no possibility that Ventura was convicted for mere possession of a firearm: the firearm was used to shoot the victims to death. Accordingly, there was error, but, even assuming the error was plain, there is no basis to remand because "there is no reasonable probability that the jury would have acquitted [Ventura] absent the error." *Marcus*, 628 F.3d at 42.

    c.   Aiding and Abetting Liability following *Rosemond v. United States*

Ventura also asserts that the jury instructions on Counts One, Four, and Five were erroneous because they did not comply with the intervening Supreme Court decision *Rosemond v. United States*, 134 S. Ct. 1240 (2014), which clarified aiding and abetting liability for Section 924(c) offenses. As relevant here, the Supreme Court in *Rosemond* held that, in order to aid and abet a Section 924(c) offense, a defendant must have "advance knowledge" of "a confederate's design to carry a gun." 134 S. Ct. at 1249. Here, the jury instructions required the jury to "find that the defendant performed some act that facilitated or encouraged the actual using, carrying of, or possession of the firearm in relation to one or both of the predicate crimes." Trial Tr. 1589. It is difficult to see how a defendant might accomplish this without advance notice that a gun would be used. Further, on Counts Four and Five, Ventura was out of the country when the murders took place, and thus his only possible facilitation or encouragement of the use or carry of the gun was in advance of the crime. With regard to Count One, the evidence tended to establish that Ventura planned to burn down a store, and that he and his accomplice were both armed when they carried out this plan. Further, the evidence indicated that Ventura lit the fire after his accomplice shot the clerk. Accordingly, at a minimum, the evidence showed that "after the gun appeared, [Ventura] continued to play an active role in the crime," *United States v. Prado*, 815 F.3d 93, 105 (2d Cir. 2016), thereby satisfying the requirements of *Rosemond*.

    d.   Section 924(c) Penalty Provisions Applied to Section 924(j)

Ventura argues that the district court erred in holding that Section 924(c) penalty provisions apply to Section 924(j) convictions. We have previously held that 924(c)'s increased sentencing provisions apply to 924(j), albeit in a non-precedential summary order. *United States v. Young*, 561 F. App'x 85, 93 (2d Cir. 2014) (summary order). All circuits to have considered the issue—except the Eleventh—have issued opinions in accord. *See United States v. Berrios*, 676 F.3d 118, 140–41 (3d Cir.2012) (holding that § 924(j)'s reference to § 924(c) incorporates the latter provisions' penalty enhancements, including consecutive sentence mandate, § 924(c)'s "veritable raison d'etre"); *United States v. Bran*, 776 F.3d 276, 281 (4th Cir. 2015) (reasoning that a rule that 924(j) does not include 924(c)'s penalties "would create an absurd result"); *United States v. Allen*, 247 F.3d 741, 769 (8th Cir. 2001) ("Although § 924(j) does not explicitly contain the same express mandatory cumulative punishment language as found in § 924(c), it incorporates § 924(c) by reference without disclaiming the cumulative punishment scheme which is so clearly set out in § 924(c)."), *vacated on other grounds*, 536 U.S. 953 (2002); *United States v. Charley*, 417 F. App'x 627, 629 (9th Cir. 2011) (nonprecedential opinion); *United States v. Battle*, 289 F.3d 661, 669 (10th Cir. 2002); *but see United States v. Julian*, 633 F.3d 1250, 1254–55 (11th Cir. 2011). We see no reason to depart from *Young*, and we again hold that Section 924(c)'s penalty provisions apply to convictions under Section 924(j).

e. Murder for Hire Jury Instructions

Ventura next argues that the district court erroneously sentenced him to a mandatory minimum of life imprisonment on Counts Two and Three, the murder for hire charges, in the absence of a jury finding specifically authorizing such a minimum. The murder for hire statute, 18 U.S.C. § 1958(a), provides for tiered penalties, culminating in sentence of death or life imprisonment, to be imposed only "if death results." Ventura was charged by indictment with violating Section 1958, "which resulted in the shooting deaths" of two victims. App'x 45, 46. During the instructions, this language from the indictment was read aloud to the jury. However, the district court did not charge the jury with specifically finding that 'death resulted' on Counts Two and Three. The jury returned a general verdict of guilty on all charges, including other Section 924(j) charges related to the two deaths.

Preliminarily, we note that there is some question as to the applicable standard of review. Ventura did not object to the jury charge, but did object at sentencing to the imposition of a mandatory minimum life sentence in the absence of a jury finding that 'death resulted' on Counts Two and Three. Assuming that Ventura's objection at sentencing is sufficient to preserve the question, harmless error review applies. *See United States v. Cordoba-Murgas*, 422 F.3d 65, 69 (2d Cir. 2005) (similarly holding that, "[i]nasmuch as [the defendant] raised the *Apprendi* claim before the District Court at sentencing, the alleged error is preserved and we review not for plain error … but under a harmless error standard").

As the Supreme Court has observed in similar statutory contexts, "[b]ecause the 'death results' enhancement increased the minimum and maximum sentences to which [Ventura] was exposed, it is an element that must be submitted to the jury and found beyond a reasonable doubt," *Burrage v. United States*, 134 S. Ct. 881, 887 (2014), pursuant to the teachings of *Alleyne v. United States*, 570 U.S. 99, 114-15 (2013) and *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). Here, the district court did not instruct the jury that it needed to find that 'death resulted' within the context of the murder for hire counts. While this was error, we conclude that it was harmless error.

In analyzing *Apprendi* and *Alleyne* instructional errors, "we consider the weight of trial evidence bearing on the omitted element." *United States v. Gomez*, 580 F.3d 94, 100 (2d Cir. 2009) (quoting *United States v. Guevara*, 298 F.3d 124, 126-27 (2d Cir. 2002) (internal quotation marks omitted)). "[W]e must determine whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Friedman*, 300 F.3d at 28 (quoting *Neder v. United States*, 527 U.S. 1, 15 (1999)) (internal quotation marks omitted).

On the record before us, we conclude that this error in charging the jury was harmless. Ventura was convicted on all counts. The evidence tended to show that Ventura arranged to have his cousin murdered, and that the hired hitmen killed both the cousin and a friend that happened to be with the cousin. While it was error to omit the specific instruction that 'death resulted' in the context of the jury charge on Counts Two and Three (the murder for hire counts), the evidence was overwhelming that the deaths did result from Ventura's murder for hire conduct. Indeed, the jury convicted Ventura of causing the death (through the use of a firearm) of those

4

two victims when it convicted him of Counts Four and Five. Further, Ventura's defense centered on showing that he was not involved in any plot against his cousin at all. The jury rejected this theory wholesale. In light of the record evidence, and the jury's verdict convicting Ventura on all charges, it is clear that the jury also found that 'death resulted' from Ventura's actions constituting the murder for hire counts, Counts Two and Three.

### f. Sufficiency of the Evidence

Finally, Ventura challenges the sufficiency of the evidence against him, both in his counseled brief and in his pro se submissions. Ventura's arguments are meritless. "We review challenges to the sufficiency of evidence de novo, and will uphold a conviction if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Dupree*, 870 F.3d 62, 78 (2d Cir. 2017) (internal quotation marks omitted). Ventura points to inconsistencies in the testimony of witnesses, as well as his own testimony professing innocence, but it is axiomatic that "[a]ssessments of witness credibility and choices between competing inferences lie solely within the province of the jury." *United States v. Cacace*, 796 F.3d 176, 192 (2d Cir. 2015) (internal quotation marks omitted).

In his pro se brief, Ventura argues that he himself never used, carried or possessed a gun, and thus could not be convicted under Section 924(j). Even if we were to accept that as true, this argument overlooks the fact that Ventura was charged with *aiding and abetting* a Section 924(c) violation. This means that he could be properly convicted without ever holding a gun, so long as he committed an act in furtherance of the predicate crime, with advance knowledge that a gun would be used by someone else. *See Rosemond*, 134 S. Ct. at 1247. Ventura further argues that he did not provide the murder weapon in the murder for hire plot, and thus could not be properly convicted on Counts Two through Five. However, the jury heard testimony from Jorge Lafontaine indicating that Ventura provided the murder weapon, and was entitled to credit that testimony. Further, Ventura's liability in no way hinged on providing the murder weapon. The jury heard extensive testimony about payment for murder, planning activities, and other acts that could easily support his convictions on Counts Two through Five.

\*      \*      \*

We have considered the remainder of Ventura's arguments, including those made in his pro se submissions, and find them to be without merit.  Accordingly, the order of the district court hereby is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

5